UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CONSOLIDATED GRAIN & BARGE, INC. | CIVIL ACTION |
| VERSUS | NO: 11-2204 c/w 11-2615 |
| RANDY ANNY, SERENDIPITY MARINE SERVICES, LLC, AND THE UNITED STATES ARMY CORPS OF ENGINEERS | SECTION: "A" (1) |

ORDER AND REASONS

Defendant the United States Army Corps of Engineers ("Corps") has filed the instant **Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief can be Granted (Rec. Doc. 33)**.  Defendant moves to dismiss Plaintiff's declaratory judgment claim against the Corps pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction under the Rivers and Harbors Act ("RHA"), 33 U.S.C. § 401, et seq., or the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.  Additionally, Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  The motion, which was set for hearing on January 18, 2012, was heard on the briefs without oral argument.[1]  For the following reasons, the motion is GRANTED.

## I.     BACKGROUND

This suit stems from a property dispute between Plaintiff Consolidated Grain and Barge, Inc. ("CGB"), and Defendant Randy Anny ("Anny").  CGB presently operates a barge fleeting operation

---

[1]     The Court notes that Defendant the Corps requested oral argument.  However, the Court does not find oral argument to be necessary in the instant case.

on the left descending bank of the Mississippi River pursuant to a permit issued by the Defendant Corps. CGB's permit, which was first issued in 1980 and has since been modified multiple times, currently authorizes CGB to fleet twenty-five tiers of barges, from either five to eight barges wide (according to the Corps) or nine barges wide (according to CGB), along a specific stretch of the Mississippi River.

Defendant Anny also holds a permit, which was first issued by the Corps in 1993. Anny's permit originally allowed for a borrow pit, but was modified in 1997 to authorize sand dredging. In February 2011, Anny applied for a permit modification which would allow barge fleeting and revise the dredging area. During the public comment period, CGB submitted a written objection to the Corps regarding Anny's barge fleeting request based on three assertions: 1) CGB held a valid permit for the same area; 2) Anny could not prove his rights to the adjacent riparian land; and 3) CGB *could* prove its rights to the adjacent riparian land. CGB alleges that it requested and was denied a public hearing on these issues. Despite CGB's objections, on June 29, 2011, the Corps granted Anny's permit modification and authorized barge fleeting of nine tiers of ten barges. According to CGB, Anny's revised permit allows him to perform the same activities as CGB in the same location on the Mississippi River.

CGB subsequently filed a **Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Damages, and Declaratory Judgment (Rec. Doc. 1)** against Defendant Anny, Defendant Serendipity Marine Services, LLC ("SMS"), and Defendant the Corps. CGB claims that Defendants have tortiously interfered with its barge fleeting operations in the Mississippi River, and seeks a declaration of its rights to operate the fleet pursuant to the permit

issued by the Corps.  According to CGB, Defendants Anny and/or SMS have disrupted its business operations and customer relations by, *inter alia*:  contacting CGB's customers and informing them that they were not authorized to moor barges at CGB's mooring facility; entering the mooring facility and attempting, without permission, to move CGB's barges located therein; and approaching a surveyor hired by CGB to survey property owned or leased by CGB, accusing said surveyor of trespassing, and demanding that the surveyor cease his work on the property.  CGB claims that the actions of Defendants Anny and SMS have resulted in irreparable harm and injury to CGB.

CGB's application for a temporary restraining order was denied (see **Rec. Doc. 6**, order by Vance, J.); however, its motion for declaratory judgment is still pending before this court.  In its complaint, CGB argues that Anny's permit is invalid because it was issued based on intentional and/or negligent misrepresentations by Anny to the Corps.  According to CGB, Anny's permit application incorrectly stated that Anny owns the riparian land which forms the site of CGB's mooring facility.  CGB asserts that had the Corps known of said misrepresentations before issuing Anny's permit, the Corps would not have or should not have issued said permit.

According to CBG, it is not feasible for CGB's permit and Anny's permit to co-exist because the permits purport to allow the parties to maintain large barge fleets at the same location on the river.  CGB asserts that, in the event that Anny were to attempt to conduct barge fleeting operations in the same location as CGB's mooring facility, as authorized by Anny's permit, their actions would "disrupt and interfere with CGB's barge fleet, create a dangerous condition on the Mississippi River, interfere with and endanger navigation on the Mississippi River, which the Corps has the right and responsibility to regulate, and endanger public health, safety, and welfare."

CGB presently seeks a declaratory judgment in its favor and against defendants Anny, SMS, and the Corps, declaring Anny's permit null and void insofar as it purports to authorize Anny to maintain a barge fleet at the same location as CBG's fleet and mooring facility.  In the alternative, CGB seeks a judgment that Anny's permit and rights to barge fleeting at that location are inferior and subject to CGB's permit and rights pursuant.

The Corps subsequently filed the instant **Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief can be Granted (Rec. Doc. 33)**.  In its motion, the Corps asserts that CGB does not state a jurisdictional basis for its declaratory judgment claim against the Corps, and that the claim against the Corps is not cognizable under either the RHA or the APA.

## II.      STANDARD OF REVIEW

### 1.   Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and possess power over only those cases authorized by the United States Constitution and federal statutes.  Coury v. Prot, 85 F.3d 244, 248 (5th Cir.1996).  If a district court lacks jurisdiction over the subject matter of a plaintiff's claims, dismissal is required.  See Fed.R.Civ.P. 12(b)(1).  The lack of subject matter jurisdiction may be raised at any time during the pendency of the case by any party or by the court.  See Kontrick v. Ryan, 540 U.S. 443, 456 (2004)("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); McDonal v. Abbott Labs, 408 F.3d 177, 182 n. 5 (5th Cir. 2005)("[A]ny federal court may raise subject matter jurisdiction *sua sponte*.").

4

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. <u>Den Norske Stats Oljeselskap As v. HeereMac Vof</u>, 241 F.3d 420, 424 (5th Cir. 2001); see also <u>Barrera–Montenegro v. United States</u>, 74 F.3d 657, 659 (5th Cir. 1996). The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction. <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. See <u>Hitt v. City of Pasadena</u>, 561 F.2d 606, 608 (5th Cir. 1977).

2.      <u>Failure to State a Claim</u>

The Corps also seeks to dismiss, for failure to state a claim under Rule 12(b)(6), all claims asserted against it by CGB. The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6). See <u>Williams v. Wynne</u>, 533 F.3d 360, 364–65 n. 2 (5th Cir. 2008) (observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. In the context of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Lormand v. U.S. Unwired, Inc.</u>, 565 F.3d 228, 232

(5th Cir. 2009) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Lovick v. Ritemoney, Ltd., 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. (citing Bell Atlantic Corp. v. Twombly, 550, U.S. 544, 555 (2007)).  Instead, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atlantic Corp., 550 U.S. at 570).  If the complaint does not contain such sufficient factual matter, then the case must be dismissed.

## III.   DISCUSSION

1.   Subject Matter Jurisdiction under the RHA and/or the APA

It is well established that under the doctrine of sovereign immunity, the United States cannot be sued without its consent.  United States v. Mitchell, 445 U.S. 535, 538, 100 S. Ct. 1349, 1351-52, 63 L. Ed. 2d 607 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued."); United States v. Testan, 424 U.S. 392, 399, 96 S. Ct. 948, 953, 47 L. Ed. 2d 114 (1976); United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 769-70, 85 L. Ed. 1058 (1941); McQueen v. Bullock, 907 F.2d 1544, 1550-51 (5th Cir. 1990).  If a suit against a federal agency is in effect a suit against the United States, the agency may claim the same limited immunity.  Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963).

Neither the statute defining federal question jurisdiction, 28 U.S.C.  § 1331, nor the Declaratory Judgment Act, 28 U.S.C. § 2201, operate in and of themselves to waive sovereign immunity or to confer jurisdiction on the federal court. See Shanbaum v. United States, 32 F.3d 180,

182 (5th Cir. 1994); Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1385 (5th Cir. 1989).  Accordingly, the Corps is immune from suit unless Plaintiff can show independent grounds for jurisdiction arising "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Plaintiff asserts that the judicial review provision of the APA provides subject matter jurisdiction for the court to invalidate one permit issued under the RHA and enforce another.[2]  The CGB permit and the Anny permit were both issued under Section 10 of the RHA, which reads:

> The creation of any obstruction not affirmatively authorized by Congress, to the navigable waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin … or other structures in any … navigable river, or other water of the United States … except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army[.] 33 U.S.C. § 403.

Congress left the authority to grant permits within the discretion of the Secretary of the Army, which has delegated said authority to the Corps.  See 33 C.F.R. § 320.2.  CGB argues that the Court has jurisdiction to review the Corps' permitting decision for abuse of discretion under the APA.

In the APA, 5 U.S.C. § 701 et seq., Congress set forth specific guidelines which courts are obliged to use in reviewing federal agency decisions.  Under the APA, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.  The Court shall

---

[2]      The RHA itself does not authorize a private right of action.  See CXY Energy, Inc. v. Jurisch, 1992 WL 211649 at *1 (E.D. La. 1992)("It is well-settled that there is no private right of action under the Rivers and Harbors Act….")

"hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Id. § 2(A).

The Fifth Circuit has previously exercised jurisdiction under the APA and applied it to evaluate permitting decisions by the Corps.  In Di Vosta Rentals, Inc. v. Lee, the court held that the agency's power to grant or deny permits under the RHA is not unlimited.  Di Vosta Rentals, Inc. v. Lee, 488 F.2d 674, 677-78 (5th Cir. 1973)(citing 5 U.S.C. § 706; Zabel v. Tabb, 430 F.2d 199 (5th Cir.1970)).  The court may review the legality of the Corps' exercise of discretion, but may not substitute its judgment for that of the agency.  Id. (citing American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 108, 23 S.Ct. 33, 47 L.Ed. 90 (1902);  Federal Reserve System v. Agnew, 329 U.S. 441, 444, 67 S.Ct. 411, 91 L.Ed. 408 (1947)).

The Court finds, consistent with the Fifth Circuit's decision in Di Vosta and the provisions of the APA, that it has subject matter jurisdiction over the instant case; the Court may therefore interpret the statutory provisions relevant to the Corps' decision to issue permits and review that decision under the "arbitrary and capricious" standard cited above.

2.     Failure to state a claim under the APA

The Court, having determined that it has subject matter jurisdiction in the instant case, will now address Defendants' arguments based on Fed. R. Civ. Pro. 12(b)(6).

CGB seeks to nullify the Corps' decision granting conflicting permits to CGB and Defendant Anny.  As stated above, a reviewing court is limited in its review of any agency decision; the standard of review for decisions made by administrative agencies is "one of great deference" and "does not include a de novo review of the facts." Jimmie Belgard v. U.S. Department of Agr., 185

F.Supp.2d 647, 653 (W.D.La. 2001)(citing <u>Brouillette v. U.S. Dep't of Agr.</u>, 840 F.Supp. 55, 57 (W.D.La. 1993)).  The Court's function is not to determine the correctness, in some ultimate sense, of an agency's actions, but to focus solely on the legality of the challenged action.  If an agency acts within the scope of its authority, and if that authority is consistent with the Constitution, then a court may not overturn the agency's decision.  <u>Di Vosta</u>, 488 F.2d at 678 (citing <u>St. Joseph Stock Yards Company v. United States</u>, 298 U.S. 38, 51, 56 S.Ct. 720, 80 L.Ed. 1033 (1936)).

CGB argues that the Court should nullify the Corps' grant of the Anny permit as an "abuse of discretion."  5 U.S.C. § 706(2)(A).  In support of this argument, CGB cites to 33 CFR § 320.4, the regulation outlining general policies for evaluating permit applications.  The regulation states that "the decision whether to issue a permit will be based on an evaluation of the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest."  33 CFR § 320.4(a)(1).  Any public interest factors which may be relevant to the proposal *must* be considered in determining whether or not to issue a permit; included among these potential factors are "considerations of property ownership."  <u>Id.</u>  The Corps is also instructed to consider as "general criteria" in evaluating each application "the extent and permanence of the beneficial and/or detrimental effects which the proposed structure or work is likely to have on the public and private uses to which the area is suited."  33 CFR § 320.4(a)(2)(iii).

CGB argues that the Corps abused its discretion in granting two permits for barge mooring at the same location, and that the Court should issue a declaratory judgment voiding the Anny permit and declaring the CGB permit valid.  According to CGB, the Corps failed to perform a thorough policy analysis when it granted Anny's permit because Anny does not have an actual property

9

interest in the property that is the subject of the permit; therefore, the granting of said permit has a detrimental effect on public and private interests.  CGB alleges that Anny has used his permit as a basis for asserting non-existent property rights and for attempting to forcibly move CGB's barges. CGB further asserts that the Corps' granting of permits to "two competing entities moving 200-foot barges in close proximity" has a negative impact on the public interest because it creates a higher possibility of river hazards in the form of allisions and collisions.

Plaintiff admits that it cannot find strictly analogous case law in support of its assertion that the Corps abused its discretion in connection with issuance of the Anny permit.[3]  CGB does cite to a case in which the Fifth Circuit found the Corps to be negligent in regards to its issuance of a permit; however, for the following reasons, the Court does not find this case to be applicable to the instant matter.  S. Natural Gas Co. v. Pontchartrain Materials, Inc., 711 F.2d 1251, 1254 (5th Cir. 1983).

In Southern Natural Gas, the Corps issued conflicting permits under Section 10 of the RHA. After a dredge owned by the defendant struck one of the plaintiff's pipelines, the plaintiff sued the Corps, claiming that the Corps' lax permitting oversight constituted negligence that contributed to

---

[3]    This Court has previously enjoined a permit issued by the Corps.  See O'Reilly v. U.S. Army Corps of Engineers, 2004 WL 1794531 (E.D.La. 2004), aff'd in part, rev'd in part, 477 F.3d 225 (5th Cir. 2007)).  The plaintiffs in that case alleged a violation of the National Environmental Policy Act of 1969 (NEPA), which requires the Corps to make specific findings regarding environmental impacts before issuing any permits affecting the wetlands.  The Fifth Circuit affirmed this Court's holding that the Corps had acted arbitrarily in issuing the permit without making the required findings.  O'Reilly involves an entirely different statute and set of requirements, and is therefore inapplicable to the present case.

the incident.  The Fifth Circuit affirmed the Corps' negligence, finding that the Corps had a duty to "prohibit incompatible activities by its permittees."  Id. at 1258.

However, Southern Natural Gas is distinguishable from the present matter in a number of key regards.  The plaintiff in Southern Natural Gas brought its maritime tort claim under the Suits in Admiralty Act ("SAA"), 46 U.S.C. § 741 et seq. (1976), not the APA.  Id. at 1254.  The plaintiff's claim was based on the Corps' failure to warn the parties of a concealed dangerous condition; over the course of several years, the Corps had issued the plaintiff three permits to construct submarine gas pipelines, but failed to forward copies of the second and third permits to the United States Coast Guard.  Id. at 1253.  As a result, the Coast Guard's charts showed only one of the three pipelines in the area, and erroneously mapped the location of that one pipeline.  The Corps also issued dredging permits to four dredging companies to operate in the same area as the pipelines.  One of the dredgers eventually struck the middle pipeline, causing extensive damage.  Id. at 1254.  Following a bench trial, during which the plaintiff had the burden of proving by a preponderance of the evidence that the Corps breached a duty to use due care in its undertakings, the Court found the Corps to be liable for 40% of the damages incurred as a result of the dredging accident.  Id. at 1252-1254.

The Court's decision in Southern Natural Gas was based in significant part on the fact that the Corps "[was] in the unique position of possessing all information relevant to all structures and uses in a particular body of water within its jurisdiction."  Id. at 1256.  The Corps' knowledge "that the dredging companies' activities would be incompatible with the submarine gas pipelines, and that a great potential for an accident existed," combined with its subsequent failure to warn, rendered it liable under the SAA.  Id.  Unlike in Southern Natural Gas, in this case, the Corps is not in the

"unique position of possessing all information." Id.  Any potential hazard arising as a result of the permits issued in this case is apparent, not concealed.  While a "simple notice or warning of a particular hazard or activity, or the prohibition of a certain activity" would have satisfied the Corps' duty to its permittees in Southern Natural Gas, such notice or warning is not necessary in the present case.  Id.

Most importantly, the court in Southern Natural Gas applied a different set of regulations to a different set of facts.  The applicable regulation in that case required the Corps to "indicate the locations of submarine pipelines and cables on government charts;" by contrast, the applicable regulation in this case explicitly states that the Corps will *not* become involved in property disputes or consider property ownership disputes when making permit decisions.  Id. at 1257 (citing 33 C.F.R. § 209.310); see also 33 C.F.R. § 320.4(g)(6).

The Court finds the circumstances of and legal issues implicated by the instant case to be more closely in line with those addressed by the First Circuit in Alliance to Protect Nantucket Sound, Inc., v. U.S., 398 F.3d 105 (1st Cir. 2005).  In Alliance, the appellants argued that the Corps' decision to issue a permit to the respondents to construct and operate an offshore data tower was arbitrary and capricious, given that the respondents allegedly lacked a property interest in the land involved.  Id. at 111.  In support of this argument, the appellants cited to 33 C.F.R. § 325.1(d)(8).  Said regulation states: "The application must be signed by the person who desires to undertake the proposed activity.... The signature of the applicant ... will be an affirmation that the applicant possesses or will possess the requisite property interest to undertake the activity proposed in the application...."  Id. (citing 33 C.F.R. § 325.1(d)(8)).  The First Circuit dismissed this argument,

pointing out that the regulation does not say that the applicant must *actually* possess, or possess in the future, the requisite property rights, but only that the applicant must make an affirmation to that effect.  <u>Id.</u>

The Corps in <u>Alliance</u> responded to the appellants' arguments by referring to another of its regulations, which provides that:

> A [Corps] permit **does not convey any property rights** ... or any exclusive privileges.  Furthermore a [Corps] permit does not authorize any injury to property or invasion of rights or any infringement of Federal, state or local laws or regulations.  The applicant's signature on an application is an affirmation that the applicant possesses or will possess the requisite property interest to undertake the activity proposed in the application.  The [Corps] **will not enter into disputes but will remind the applicant of the above.  The dispute over property ownership will not be a factor in the Corps public interest decision**.

<u>Id.</u> (citing 33 C.F.R. § 320.4(g)(6) (emphasis added)).  The Corps asserted that § 320.4(g)(6)'s requirement that a "dispute over property ownership will not be a factor in the Corps public interest decision" applies to preclude any consideration of a dispute over the adequacy of an applicant's property interests in the project site.  <u>Id.</u>

The appellants in <u>Alliance</u> argued before the district court that the requirement that applicants affirm possession of the requisite property interests for the proposed activity, 33 C.F.R. § 320.4(g)(6), means that such property interests must, in fact, be possessed by the applicant.  <u>Id.</u> They alleged that because the respondent had no property interest in the proposed data tower site, nor could it obtain such an interest under current law, its Section 10 permit application ought to have been denied.  <u>Id.</u>  Both the district court and the First Circuit rejected this argument, finding that "the face of § 320.4(g)(6) evidences the Corps' intent not to be involved in private property disputes."

Id. at 112.  The Court rejected the appellants' argument that the regulations imposed an obligation on the Corps to resolve disputes over the ownership of public (or private) property, holding that "the regulation does not purport to address disputes over public property, but rather attempts to insulate the Corps from addressing those disputes."  Id.

The Court finds the Alliance case to be analogous to the instant matter, and adopts the First Circuit's reasoning in that case.  The Corps balances numerous public interest factors when deciding to grant or deny a Section 10 permit application, and "property ownership" is one of said factors. However, the regulations clearly state that the Corps disclaims responsibility for or involvement in property disputes.  See 33 C.F.R. § 320.4(g)(6)("The dispute over property ownership will not be a factor in the Corps public interest decision.")

Under the applicable regulations, Anny's signature on his application for a permit was sufficient affirmation that he owned the riparian land affected by the terms of the permit.  As the regulation explicitly states, any dispute regarding ownership of land is not factored into the Corps' decision whether or not to issue a permit.  Plaintiff was unable to provide any case law contradicting this interpretation of the relevant regulations.  The Court therefore finds that the Corps acted legally, in accordance with its regulations, and did not act arbitrarily or capriciously or abuse its discretion in issuing the CGB and Anny permits.

The Court does not see any evidence in support of CGB's claim that, in granting permits to Anny and CGB at the same point along the Mississippi River, the Corps created a hazard to maritime navigation and safety.  The applicable regulations clearly state that a Corps-issued permit "does not convey a property right, nor authorize any injury to property or invasion of other rights."

14

33 C.F.R. §320.4(g).  Though the Corps did issue permits to both parties, the permits alone did not provide either CGB or Anny with the right to conduct barge fleeting operations in the absence of the necessary property interest.  The Court finds that the Corps did not act outside of the scope of its authority or create any hazards to maritime navigation and safety merely by granting the permits at issue.  CGB has not provided sufficient factual content for the Court to reasonably infer that the plaintiff is entitled to relief on its claims against the Corps; even taking all facts as true and resolving all inferences and doubts in CGB's favor, CGB's claim does not entitle it to relief under the terms of the applicable statutes.  See Benton v. United States, 960 F.2d 19, 21 (5th Cir.1992).

For the foregoing reasons, therefore, the Court must grant the Corps'**Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief can be Granted (Rec. Doc. 33)** subject to Fed. R.Civ. Pro. 12(b)(6).

## IV.    CONCLUSION

Accordingly;

IT IS ORDERED that Defendant's **Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief can be Granted (Rec. Doc. 33)** is **GRANTED**.  Plaintiff's declaratory judgment claim against the Army Corps of Engineers is hereby **DISMISSED**.

This 14th of February, 2012.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE