UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONSOLIDATED GRAIN & BARGE, INC.                    CIVIL ACTION

VERSUS                                              NO: 11-2204 c/w 11-2615

RANDY ANNY, SERENDIPITY                             SECTION: "A" (1)
MARINE SERVICES, LLC


ORDER AND REASONS

Defendant Randy Anny ("Anny") has filed the instant **Motion to Dismiss Pursuant to Rule 12(b)(1) or, Alternatively, Pursuant to Rule 12(b)(6) (Rec. Doc. 41)**. Defendant moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction under two abstention doctrines. Additionally, Defendant argues that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion, which was set for hearing on February 15, 2012, was heard on the briefs without oral argument. For the following reasons, the motion is DENIED.

## I.     BACKGROUND

This suit stems from a property dispute between Plaintiff Consolidated Grain and Barge, Inc. ("CGB"), and Defendant Randy Anny ("Anny"). CGB presently operates a barge fleeting operation on the left descending bank of the Mississippi River pursuant to a permit issued by the Army Corps of Engineers ("Corps").[1] CGB's permit, which was first issued in 1980 and has since been modified

---

[1]      The Corps was originally a defendant in the instant suit. However, on February 17, 2012, the Court granted a **Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief can be Granted (Rec. Doc. 33)** filed by the Corps, finding that CGB did not state a

multiple times, currently authorizes CGB to fleet twenty-five tiers of barges along a specific stretch of the Mississippi River.

Defendant Anny also holds a permit, which was first issued by the Corps in 1993. Anny's permit originally allowed for a borrow pit, but was modified in 1997 to authorize sand dredging. In February 2011, Anny applied for a permit modification which would allow barge fleeting and revise the dredging area. During the public comment period, CGB submitted a written objection to the Corps regarding Anny's barge fleeting request based on three assertions: 1) CGB held a valid permit for the same area; 2) Anny could not prove his rights to the adjacent riparian land; and 3) CGB *could* prove its rights to the adjacent riparian land. CGB alleges that it requested and was denied a public hearing on these issues. Despite CGB's objections, on June 29, 2011, the Corps granted Anny's permit modification and authorized barge fleeting of nine tiers of ten barges. According to CGB, Anny's revised permit allows him to perform the same activities as CGB at the same location on the Mississippi River.

CGB subsequently filed a **Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Damages, and Declaratory Judgment (Rec. Doc. 1)** against Defendant Anny, Defendant Serendipity Marine Services, LLC ("SMS"), and the Corps.[2] CGB claims that Defendants have tortiously interfered with its barge fleeting operations in the Mississippi

jurisdictional basis for its declaratory judgment claim against the Corps, and that the claim against the Corps was not cognizable under either the RHA or the APA. Accordingly, the Corps is no longer a party to this suit. See **Rec. Doc. 54.**

[2]    As stated *supra*, all claims against the Corps have since been dismissed.

2

River, and seeks a declaration of its rights to operate the fleet pursuant to its permit issued by the Corps. According to CGB, Defendants Anny and/or SMS have disrupted its business operations and customer relations by, *inter alia*: contacting CGB's customers and informing them that they were not authorized to moor barges at CGB's mooring facility; entering the mooring facility and attempting, without permission, to move CGB's barges located therein; and approaching a surveyor hired by CGB to survey property owned or leased by CGB, accusing said surveyor of trespassing, and demanding that the surveyor cease his work on the property. CGB claims that the actions of Defendants Anny and SMS constitute a maritime tort, specifically, trespass. CGB asserts that Defendants' actions have resulted in irreparable harm and injury to CGB, and seeks damages for that harm.

CGB's application for a temporary restraining order was denied (see **Rec. Doc. 6**, order by Vance, C.J.); however, its motion for declaratory judgment is still pending before this court. In its complaint, CGB argues that Anny's permit was issued in violation of the Administrative Procedure Act (APA) and is invalid because it was issued based on intentional and/or negligent misrepresentations by Anny to the Corps. According to CGB, Anny's permit application incorrectly stated that Anny owns the riparian land which forms the site of CGB's mooring facility. CGB asserts that had the Corps known of said misrepresentations before issuing Anny's permit, the Corps would not have or should not have issued said permit.

According to CGB, it is not feasible for CGB's permit and Anny's permit to co-exist because the permits purport to allow the parties to maintain large barge fleets at the same location on the river. CGB asserts that, in the event that Anny were to attempt to conduct barge fleeting operations

in the same location as CGB's mooring facility, as authorized by Anny's permit, their actions would "disrupt and interfere with CGB's barge fleet, create a dangerous condition on the Mississippi River, interfere with and endanger navigation on the Mississippi River...and endanger public health, safety, and welfare."

CGB presently seeks a declaratory judgment in its favor and against defendants Anny and SMS, declaring Anny's permit to be violative of the APA and null and void insofar as it purports to authorize Anny to maintain a barge fleet at the same location as CBG's fleet and mooring facility. In the alternative, CGB seeks a judgment that Anny's permit and rights to barge fleeting at that location are inferior and subject to CGB's permit and rights pursuant. CGB further seeks damages for trespass and for reputational harms caused by Anny's alleged conduct.

In the present motions, Defendant Anny argues that the instant suit should be dismissed pursuant to 12(b)(1), or, in the alternative, 12(b)(6), based on the <u>Younger</u> abstention doctrine and/or the <u>Colorado River</u> abstention doctrine. According to Defendant's motion, there are two cases currently pending in state court which are substantially similar to the instant matter. Defendant alleges that both the federal and state cases are based on a dispute over the ownership of riparian property rights adjacent to the Mississippi River at approximately sixty-seven (67) miles above the City of New Orleans. Defendant further states that the same counsel that is engaged on behalf of CGB in this court represents CGB in the parallel state cases.

The first state suit[3] was filed in March 2011 by Anny and alleged co-owners of the

_____

[3]     This suit is captioned "Dland, LLC, Barbara Falgoust, Randy Anny and James Moses v. Zen-Noh Grain Corporation, CGB Marine Services at Mile 164, a division of Consolidated Grain &

4

abovementioned property against CGB and CGB's parent company, Zen-Noh Grain Corporation. In this suit, Anny and his co-plaintiffs claim to have ownership or leasehold rights in the property and allege that CGB is interfering with those rights by blocking water access to the property and disrupting plaintiffs' fleeting and mooring operations. They seek injunctive relief and damages from CGB.

The second state suit[4] was filed on September 2, 2011, the same day CGB initiated the instant case in federal court, by Zen-Noh Corporation. Zen-Noh, which is one of the owners of CGB, sued Anny and his wife Barbara Falgoust, claiming an undivided ownership interest in the abovementioned property.

Defendant Anny alleges that both the state court cases and the instant federal case are related to rights in a parcel of property, and the right to moor barges on a batture of property. He argues that because the issue of those property rights is already pending before a state court, the Court does not have jurisdiction, or should decline to exercise jurisdiction in the instant case based on abstention doctrines.

Plaintiff argues that, regardless of the dismissal of the Corps as a defendant in the present case, the court has continuing jurisdiction based on 28 U.S.C.A. § 1333. § 1333 states in relevant

---

Barge, Inc., Consolidated Grain and Barge Co., and CGB Enterprises, Inc.," and is identified by docket number 34,503 in the 23rd Judicial District Court, Parish of St. James.

[4]    This case is captioned "Zen-Noh Grain Corporation v. Randy Anny, in his capacity as the Administrator of the Succession of Victoria Francois Ester Martin, and Barbara Falgoust," and is identified by the docket number 34,841 in the 23rd Judicial District Court, Parish of St. James.

part that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty or maritime jurisdiction[.]"  Plaintiff asserts that Defendants have unlawfully interfered with Plaintiff's barges, which are marine vessels which were located on the Mississippi river, a navigable waterway.  Plaintiff argues that Defendants' interference with the vessels is an action constituting trespass, which is a tort recognized in admiralty, and that therefore this court has jurisdiction over the instant case.

Plaintiff further rejects Defendant's claims that the court should abstain from the instant matter, arguing that the state court suits involve different issues and different parties.  According to Plaintiff, while the state court cases essentially revolve around the issue of property ownership, this case is a suit under the APA to nullify an improperly issued permit, along with a related request to enjoin the defendants from interfering with the plaintiff's fleeting operations.  Plaintiff asserts that these issues are not implicated in the state court suits, and that abstention is therefore not justified.

## II. LAW AND ANALYSIS

### 1. Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and possess power over only those cases authorized by the United States Constitution and federal statutes.  Coury v. Prot, 85 F.3d 244, 248 (5th Cir. 1996).  If a district court lacks jurisdiction over the subject matter of a plaintiff's claims, dismissal is required.  See Fed.R.Civ.P. 12(b)(1).  The lack of subject matter jurisdiction may be raised at any time during the pendency of the case by any party or by the court.  See Kontrick v. Ryan, 540 U.S. 443, 456 (2004)("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance.");

McDonal v. Abbott Labs, 408 F.3d 177, 182 n. 5 (5th Cir. 2005)("[A]ny federal court may raise subject matter jurisdiction *sua sponte*.").

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420, 424 (5th Cir. 2001); see also Barrera–Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996). The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. See Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977).

### A.    Admiralty or Maritime Jurisdiction under§ 1333

Plaintiff asserts that this court has subject matter jurisdiction over this suit pursuant to federal admiralty jurisdiction based on its claim that Defendants committed a maritime tort, specifically, trespass. The United States Supreme Court has set forth a two part test to determine whether an incident has a sufficient connection to traditional maritime activity to support admiralty tort jurisdiction. For a court to have maritime jurisdiction over a tort claim, a plaintiff must demonstrate that: (1) the tort must have occurred on navigable water; and (2) the tort bears a substantial relationship to traditional maritime activity. Hasty v. Trans Atlas Boats Inc., 389 F.3d 510 (citing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534, 115 S.Ct. 1043, 130

L.Ed.2d 1024 (1995)).

The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." <u>Strong v. B.P. Exploration & Prod., Inc</u>., 440 F.3d 665, 669 (5th Cir. 2006)(quoting <u>Grubart</u>, 513 U.S. at 534).

Plaintiff contends that Defendants have committed the tort of trespass by unlawfully interfering with Plaintiff's barges. The Fifth Circuit and courts of this district have held that trespass is a tort recognized in admiralty which can give rise to maritime subject matter jurisdiction. See <u>Marastro Compania Naviera, S.A. v. Canadian Mar. Carriers, Ltd.</u>, 959 F.2d 49, 53 (5th Cir. 1992)("We hold that general common law and in particular the Restatement (Second) of Torts should control to determine the law of maritime trespass, in order to promote uniformity in general maritime law."); see also <u>W. Geophysical Co., a Div. Of W. Atlas Intern., Inc. v. Adriatic, Inc.</u>, 1996 WL 453125 at *3 (E.D.La. Aug. 9, 1996)(finding that a claim of trespass to the plaintiffs' oyster beds had a sufficient connection to traditional maritime activity to support admiralty tort jurisdiction.).

It is undisputed that the alleged tort involved vessels situated in the navigable waters of the United States; as such, the location requirement is met in this case. See <u>IMTT-Gretna v. Robert E. Lee SS</u>, 999 F.2d 105, 106 (5th Cir. 1993)(the Mississippi River is a navigable waterway); see also <u>The V-14813</u>, 65 F.2d 789 (5th Cir. 1933)(barges having no means of self-propulsion, but employed

on navigable waters, are "vessels" subject to federal courts' admiralty jurisdiction).

The Court further finds that both elements of the "connection" portion of the test for admiralty jurisdiction are met in this case. On the first connection factor, after examining the general features of the type of issue involved, the Court finds that the alleged tort has a potentially disruptive impact on marine commerce. The vessels involved affect maritime commerce and were located in navigable waters at the time the alleged trespass occurred, and a court in this district has previously held that a "claim of trespass can have a potentially disruptive effect on maritime commerce if vessels are not allowed to navigate the waterways freely." W. Geophysical Co., 1996 WL 453125 at *3.

On the second connection factor, the general character of the activity giving rise to the incident shows a substantial relationship to traditional marine activity. Barge fleeting facilitates the transportation of marine cargo, which is a traditional maritime activity; unauthorized interference with a barge fleet could clearly impact maritime commerce. See Moser v. Texas Trailer Corp., 623 F.2d 1006,1009 (5th Cir. 1980)("[T]he loading of cargo [is] a traditional maritime activity....The vehicle involved was a barge, whose function was transportation across navigable waters, a traditional role of watercraft.(internal quotation omitted)). Therefore, the Court finds that both the location and connection elements of the test for maritime jurisdiction are met; the Court has subject matter jurisdiction over the instant case subject to 28 U.S.C.A. § 1333 based on Plaintiff's marine trespass claim.

B.    Abstention

Given the Court's finding that it has subject matter jurisdiction, the issue remaining is

whether it should now abstain from the case based on either the <u>Younger</u> or <u>Colorado River</u> doctrines. Applying an abstention doctrine presupposes subject matter jurisdiction over a case. <u>Wallace v. La. Citizens Prop. Ins. Corp.</u>, 444 F.3d 697, 701 (5th Cir. 2006) ("Abstention implies that there is subject matter jurisdiction but for some other policy reason, a court refrains from exercising that power to hear the merits of a case."). The Court must always be assured that it has subject matter jurisdiction. See, e.g., <u>Free v. Abbott Labs., Inc.</u>, 164 F.3d 270, 272 (5th Cir. 1999).

Abstention is the relinquishment of a federal court's jurisdiction "when necessary to avoid needless conflict with a state's administration of its own affairs." Black's Law Dictionary (8th ed.2004). Abstention is available only in certain, quite limited circumstances. Generally, the federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (abstention is extraordinary and narrow exception to court's duty to adjudicate controversy properly before it); see also <u>Zwickler v. Koota</u>, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967) (abstention applies only in narrowly limited "special circumstances").

1. *Younger* Doctrine

Abstention under <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), "is generally deemed appropriate [when] assumption of jurisdiction by a federal court would interfere with pending state proceedings, whether of a criminal, civil, or even administrative character." <u>Louisiana Debating and Literary Ass'n v. City of New Orleans</u>, 42 F.3d 1483, 1489 (5th Cir. 1995)(citing <u>Word of Faith World Outreach Center Church, Inc. v. Morales</u>, 986 F.2d 962, 966 (5th Cir.), cert. denied, 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993)).

In Younger, the Court was concerned with federal court interference with a state's ability to function. Royal Ins. Co. of America v. Quinn-L Capital Corp., 3 F.3d 877, 886 (5th Cir. 1993)(citing Younger, 401 U.S. 37). By blocking proceedings involving state governments, federal courts could interfere unduly with the state's ability to govern. Id. These federalism concerns are implicated no matter when the federal and state suits are filed: a state's ability to conduct proceedings is compromised if the officials conducting those proceedings are involved in discovery in federal court. Id.

The Court finds that the Younger doctrine does not apply in the instant case. Younger abstention can be applied to "state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings, the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." Id. at 1490 (citing Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 627, 106 S.Ct. 2718, 2722-23, 91 L.Ed.2d 512 (1986)). As the Younger Doctrine applies to constitutional challenges to state criminal or disciplinary activities, the two critical elements required before considering Younger are absent from the instant matter: a constitutional challenge and an on-going state disciplinary or criminal proceeding. And even where the Younger Doctrine has been extended into the civil realm, the state or a state actor is almost invariably a party in interest. See Watershed Software Group, LLC v. Camping Companies, Inc., 2002 WL 31528464 (E.D.La. Nov. 8, 2002)(citing Huffman v. Pursue, Ltd., 420 U.S. 592 (1975) (state suing pursuant to public nuisance statute); Juidice v. Vail, 430 U.S. 327 (1977) (federal injunction sought against state judge seeking to employ statutory contempt procedures); Trainor v. Hernandez, 431 U.S. 434 (1977) (state suing civilly rather than criminally

for welfare fraud); but see <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1 (1987)).

The State is not a party to this action, and the Court finds that any potential State interests in the proceeding are not "so important that exercise of the federal judicial power would disregard the comity between the States and the National Government."  See <u>Health Net, Inc. v. Wooley</u>, 534 F.3d 487, 494 (5th Cir. 2008).  Therefore, the Court finds that the <u>Younger</u> doctrine does not apply in the present case.

2.     <em><u>Colorado River</u> Doctrine</em>

Under <u>Colorado River</u>, a federal court may stay or dismiss a case in favor of a concurrent state court proceeding under "extraordinary and narrow" circumstances when the interests of justice require.  <u>Murphy v. Uncle Ben's, Inc</u>., 168 F.3d 734, 737 (5th Cir. 1999). However, in light of the "virtual unflagging obligation of the federal courts to exercise the jurisdiction given them," the general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction." <u>Colorado River</u>, 424 U.S. at 817.  After reviewing the facts of the case and Fifth Circuit case law on this issue, the Court finds that there are no exceptional circumstances warranting abstention in the instant matter.

The <u>Colorado River</u> standard can only be applied when related federal and state cases are parallel, which generally means that the actions involve the same parties and the same issues. <u>Transocean Offshore v. Catrette</u>, 239 Fed. App'x at 12; <u>Stewart v. Western Heritage Ins. Co.</u>, 438 F.3d 488, 491 (5th Cir. 2006); <u>American Guarantee & Liability Ins. Co. v. Anco Insulations, Inc</u>., 408 F.3d 248, 251 (5th Cir. 2005); <u>Diamond Offshore Co. v. A & B Builders, Inc</u>., 302 F.3d 531, 540 (5th Cir. 2002); <u>RepublicBank Dallas Nat'l Ass'n v. McIntosh</u>, 828 F.2d 1120, 1121 (5th Cir.

1987). The Fifth Circuit has not always insisted on a precise identity of parties, however, stating that "there need not be applied in every instance a mincing insistence on precise identities." RepublicBank Dallas, 828 F.2d at 1121. Thus, suits may be found to be parallel "while not absolutely symmetrical" but consisting of "substantially the same parties litigating substantially the same issues." Kenner Acquisitions, L.L. C. v. BellSouth Telecommunications, Inc., No. 06–3927, 2007 WL 625833, at *2 (E.D.La. Feb. 26, 2007), citing Caminiti & Iatarola, Ltd. v. Behnke Warehousing, 962 F.2d 698, 700–701 (7th Cir. 1992).

If the proceedings are parallel, the court must then engage in a multi-factor analysis to determine whether exceptional circumstances support deference to the state court. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15-16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Black Sea Inv., Ltd. v. United Heritage Corp., 204 F.3d 647, 650 (5th Cir. 2000)).[5] In assessing the propriety of abstention according to these factors, a federal court must keep in mind that "the balance [should be] heavily weighted in favor of the exercise of jurisdiction." Black Sea, 204 F. 3d at 650 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 16, 103 S.Ct. 927).

The Court finds that, in light of the heavy weighting of the balance in favor of the exercise of jurisdiction, abstention in the instant case is clearly inappropriate. This Court first finds that this is not a "parallel proceeding" because neither the parties nor the issues are the same or substantially

---

[5] Those factors include: (1) either court's assumption of jurisdiction over a res; (2) the relative convenience of the fora; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained in the fora; (5) whether and to what extent federal law governs the case; and (6) the adequacy of the state proceeding. Id.

the same. The parties involved in the first state suit are Plaintiffs Dland, LLC, Barbara Falgoust, Randy Anny and James Moses, who all claim co-ownership of the subject property, and Defendants Zen-Noh Grain Corporation, CGB Marine Services at Mile 164 (a division of Consolidated Grain & Barge, Inc.), Consolidated Grain and Barge Co., and CGB Enterprises, Inc. In his motion to dismiss, Anny asserts that Zen-Noh is a parent corporation of CGB, a claim that CGB does not deny. The parties involved in the second state suit are Plaintiff Zen-Noh Grain Corporation and Defendant Randy Anny. The federal court case is limited to Plaintiff CGB and Defendants Randy Anny and SMS[6], while additional parties are involved in the St. James Parish suits.

Though at the heart of both the federal and state suits is a dispute over the ownership of the same property, in the instant federal case, CGB alleges the maritime tort of trespass to movable property; CGB asks the Court to recognize Anny and SMS' allegedly unlawful physical interference with CGB's barges and prevent future interference. CGB alleges in its opposition to the instant motion that even if Anny has full rights in the property, neither he nor SMS has the self-help right or remedy to forcibly remove someone else's barges from that property.

Although the cases are clearly related and involve the issue of property ownership over the riparian land on the Mississippi river, in employing the strict standard favoring the exercise of federal jurisdiction the Court finds that the two cases are not sufficiently parallel for the application of the Colorado River doctrine. See Royal Manufactured Homes, LLC v. New Hampshire Insurance

---

[6]     SMS, which is not a party to the state suits, describes itself in its pending **Federal Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted by Respondent (Rec. Doc. 45)** as a "third party...an employed service...that only acted under and at the direction of Mr. Randy Anny."

Company, 2012 WL 704086 (W.D.La., March 1, 2012). As the case does not survive the first part of the Colorado River test, it is unnecessary to reach the second step and perform a multi-factor analysis in the instant matter.

### 2. Failure to State a Claim

Defendant Anny also seeks to dismiss, for failure to state a claim under Rule 12(b)(6), all claims asserted against it by CGB. The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6). See Williams v. Wynne, 533 F.3d 360, 364–65 n. 2 (5th Cir. 2008) (observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. In the context of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Lovick v. Ritemoney, Ltd., 378 F.3d 433, 437 (5th Cir. 2004)).

For the reasons stated *supra*, the Court finds that it has jurisdiction over the instant case and that abstention is not warranted. Dismissal under 12(b)(6) would be improper.

### III. CONCLUSION

The Court finds that it has subject matter jurisdiction in the instant case pursuant to 28 U.S.C.A. § 1333 and that abstention would be inappropriate under both the Colorado River and

Younger doctrines.

Accordingly;

IT IS ORDERED that Defendant Anny's **Motion to Dismiss Pursuant to Rule 12(b)(1) or, Alternatively, Pursuant to Rule 12(b)(6) (Rec. Doc. 41)** is **DENIED**.

This 20th of April, 2012.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE