UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CONSOLIDATED GRAIN & BARGE, INC. | CIVIL ACTION |
| VERSUS | No. 11-2204 c/w 11-2615<br>Ref: 11-2204 |
| RANDY ANNY, SERENDIPITY MARINE SERVICES, LLC, AND THE UNITED STATES ARMY CORPS OF ENGINEERS | SECTION: "A" (1) |

**ORDER AND REASONS**

Defendants Randy Anny and Serendipity Marine Services, L.L.C. have filed the instant **Motion to Dismiss (Rec. Doc. 101)**. Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction arguing that Plaintiff lacks standing under Article III to assert its claims. The motion, which was set for hearing on November 7, 2012, was heard on the briefs without oral argument. For the following reasons, the motion is DENIED.

**I.    BACKGROUND**

This suit stems from a property dispute between Plaintiff Consolidated Grain and Barge, Inc. ("CGB"), and Defendant Randy Anny ("Anny"). CGB presently operates a barge fleeting operation on the left descending bank of the Mississippi River pursuant to a permit issued by the Army Corps of Engineers ("Corps").[1] CGB's permit, which was first issued in 1980 and has since

---

[1]The Corps was originally a defendant in the instant suit. However, on February 17, 2012, the Court granted a **Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim upon Which Relief Can Be Granted (Rec. Doc. 33)** filed by the Corps, finding that CGB did not state a jurisdictional basis for its declaratory judgment claim against the Corps, and that the claim against the Corps was not cognizable under either the RHA or the APA. Accordingly, the Corps is no longer a party to this suit. *See* Rec. Doc. 54.

been modified multiple times, currently authorizes CGB to fleet twenty-five tiers of barges along a specific stretch of the Mississippi River.

Defendant Anny also holds a permit, which was first issued by the Corps in 1993. Anny's permit originally allowed for a borrow pit, but was modified in 1997 to authorize sand dredging. In February 2011, Anny applied for a permit modification which would allow barge fleeting and revise the dredging area. During the public comment period, CGB submitted a written objection to the Corps regarding Anny's barge fleeting request based on three assertions: 1) CGB held a valid permit for the same area; 2) Anny could not prove his rights to the adjacent riparian land; and 3) CGB *could* prove its rights to the adjacent riparian land. CGB alleges that it requested and was denied a public hearing on these issues. Despite CGB's objections, on June 29, 2011, the Corps granted Anny's permit modification and authorized barge fleeting of nine tiers of ten barges. According to CGB, Anny's revised permit allows him to perform the same activities as CGB in the same location on the Mississippi River.

CGB subsequently filed a **Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Damages, and Declaratory Judgment (Rec. Doc. 1)** against Defendant Anny, Defendant Serendipity Marine Services, LLC ("SMS"), and Defendant the Corps.[2] CGB claims that Defendants have tortiously interfered with its barge fleeting operations in the Mississippi River, and seeks a declaration of its rights to operate the fleet pursuant to the permit issued by the Corps. According to CGB, Defendants Anny and/or SMS have disrupted its business operations and customer relations by, *inter alia*: contacting CGB's customers and informing them

---

[2]As stated *supra*, all claims against the Corps have since been dismissed.

that they were not authorized to moor barges at CGB's mooring facility; entering the mooring facility and attempting, without permission, to move CGB's barges located therein; and approaching a surveyor hired by CGB to survey property owned or leased by CGB, accusing the surveyor of trespassing, and demanding that the surveyor cease his work on the property.  CGB claims that the actions of Defendants Anny and SMS constitute a maritime tort, specifically, trespass. CGB asserts that Defendants' actions have resulted in irreparable harm and injury to CGB, and seeks damages for that harm.

CGB's application for a temporary restraining order was denied (see **Rec. Doc. 6**, order by Vance, J.); however, its motion for declaratory judgment is still pending before the Court.  In its complaint, CGB argues that Anny's permit was issued in violation of the Administrative Procedure Act ("APA") and is invalid because it was issued based on intentional and/or negligent misrepresentations by Anny to the Corps.  According to CGB, Anny's permit application incorrectly stated that Anny owns the riparian land which forms the site of CGB's mooring facility.  CGB asserts that, had the Corps known of said misrepresentations before issuing Anny's permit, the Corps would not have or should not have issued said permit.

According to CGB, it is not feasible for CGB's permit and Anny's permit to co-exist because the permits purport to allow the parties to maintain large barge fleets at the same location on the river.  CGB asserts that, in the event that Anny were to attempt to conduct barge fleeting operations in the same location as CGB's mooring facility, as authorized by Anny's permit, their actions would "disrupt and interfere with CGB's barge fleet, create a dangerous condition on the Mississippi River, interfere with and endanger navigation on the Mississippi River, . . . and endanger public health, safety, and welfare."

CGB presently seeks a declaratory judgment in its favor and against Defendants Anny and SMS declaring Anny's permit to be violative of the APA and null and void insofar as it purports to authorize Anny to maintain a barge fleet at the same location as CGB's fleet and mooring facility. In the alternative, CGB seeks a judgment that Anny's permit and rights to barge fleeting at that location are inferior and subject to CGB's permit and rights pursuant to it. CGB further seeks damages for trespass and for reputational harms caused by Anny's alleged conduct.

In the instant motion, Defendants argue that because CGB is allegedly not the entity conducting the permitted barge fleeting operations nor the entity possessing the riparian land rights required for fleeting, CGB lacks standing to assert the claims brought in this lawsuit and therefore those claims must be dismissed for want of subject matter jurisdiction.

## II.     STANDARD OF REVIEW

### 1. Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and possess power over only those cases authorized by the United States Constitution and federal statutes. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir.1996). If a district court lacks jurisdiction over the subject matter of a plaintiff's claims, dismissal is required. *See* Fed.R.Civ.P. 12(b)(1). The lack of subject matter jurisdiction may be raised at any time during the pendency of the case by any party or by the court. *See Kontrick v. Ryan*, 540 U.S. 443, 456 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); *McDonal v. Abbott Labs*, 408 F.3d 177, 182 n. 5 (5th Cir. 2005) ("[A]ny federal court may raise subject matter jurisdiction *sua sponte*.").

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone,

4

presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The party asserting jurisdiction bears the burden of establishing that the district court has jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not ordinarily prevent the plaintiff from pursuing the claim in another forum. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

      2.    <u>Article III Standing</u>

Standing, as required under Article III, Section 2, of the Constitution addresses *who* may bring the suit.15-101 Moore's Federal Practice - Civil § 101.20 (*See Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1469-1470 (3d Cir. 1994)). "The standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Id.* (*See Allen v. Wright*, 468 U.S. 737, 752, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)). Further, "[t]he standing requirement is part of the case or controversy needed to establish jurisdiction." 12-57 Moore's Federal Practice - Civil § 57.22. (*See Abbott Labs. v. Gardner*, 387 U.S. 136, 148-149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)). Lastly, "[s]tanding must affirmatively appear in the record, and may not be inferred argumentatively from averments in pleadings." *Id.* (*See* Footnote 39. 28 U.S.C. § 2201(a). *See also* Advisory Committee Note to 1937 Adoption to Fed. R. Civ. P. 57 (see § 57App.01[2])).

As recently held by the Fifth Circuit in *In Re Mirant Corp.*, 675 F.3d 530 (5th Cir. 2012):

Constitutional standing requires three elements: First, the plaintiff must have suffered

> an "injury in fact"- an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*In Re Mirant Corp.*, 675 F.3d 530, 33 (5th Cir. 2012) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted).

### III.   DISCUSSION

In the present 12(b)(1) motion, Defendants argue that CGB lacks Article III standing. Defendants argue that CGB is not the proper party with a right of action in the instant case and therefore the Court lacks subject matter jurisdiction and must dismiss the litigation. Defendants cite *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981), among other cases, to establish that a motion for dismissal under Rule 12(b)(1) can be predicated upon either a "facial" attack, or a "factual" attack to jurisdiction. As explained in *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511:

> A "facial attack" on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. A "factual attack," however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. Moreover, a "factual attack" under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist.

(Citations omitted). Further, when a "factual" attack to jurisdiction is raised no presumption of truthfulness attaches to the plaintiff's allegations. *Williamson,* 645 F.2d 404*,* 412. District courts are empowered to resolve disputed factual issues related to jurisdiction under 12(b)(1) motions because, as stated in *Williamson*, "[i]t is elementary that a district court has broader power to decide its own

right to hear a case than it has when the merits of the case are reached." *Id.* at 413. Defendants in the instant motion assert a "factual" attack to jurisdiction and argue that the Court should resolve the disputed issue of standing in their favor and dismiss this case for want of subject matter jurisdiction because the wrong party brought this action.

In support of the instant motion, Defendants first point to the Department of the Army permit, SE (Mississippi River) 1117 ("permit 1117"), which was transferred from GW Contractors, Inc., to "Consolidated Grain & Barge, Inc." on or about December 12, 1996[3] and then subsequently modified by what Defendants have styled "other juridical entities" thereby ostensibly calling into question whether CGB is in fact still the holder of, or the proper party to hold, the permit. For example, on or about September 22, 1997 an application was filed with the Department of the Army to install anchor pipes and mooring chains in the vicinity of River Mile 165.7 by "CGB Marine Services at M.P. 164."[4] Then, on or about October 12, 1999 an application was filed with the Louisiana Department of Natural Resources, Coastal Management Division seeking permission to install a permanently moored deck barge with spud piling by "CGB Marine Services at M.P. 164, Inc.."[5] Then on or about May 12, 2012 an application was filed with the Louisiana Department of

---

[3]Transfer was finalized by the Department of the Army on December 20, 1996. *See* Rec. Doc. 101-4.

[4]The Court notes that as part of this application, a Form of No Objection letter was entered by the State of Louisiana Department of Transportation and Development wherein "CGB Marine Service" is listed as the applicant. *See* Rec. Doc. 101-5 at 2.

[5]The Court notes that as part of this application, even within the initial correspondence, "CGB Marine Services at M.P. 164, Inc.", "CGB Marine Services", and "CGB Marine" are all names listed in one form or another as the sole applicant. Further, by letter of October 27, 1999 from the State of Louisiana Department of Natural Resources "CGB Marine Services @ M.P. 164, Inc." is referenced as the applicant. *See generally* Rec. Doc. 101-6.

Natural Resources, Office of Coastal Management, seeking permission to establish a new barge fleeting area to increase the capacity of an existing barge fleeting facility by "CGB Marine Services @ M.P. 164." Finally, Defendants point to a letter and attachments mailed on August 22, 2012 by counsel for CGB indicating that "CGB Marine Services at M.P. 164, Inc." held permit 1117 which had been issued on November 5, 1999 to "cover the installation and maintenance of a permanently moored deck barge with spud piling at an existing permitted barge fleeting facility, in the Miss. River, at a point about 165.2 miles above Head of Passes, on the LDB, near Central, Louisiana, in St. John Parish." Defendants argue that further confusion as to the identity of the holder of permit 1117 arises from the fact that the various required leases underpinning the permit list "CGB Marine Services at Mile 164, a division of Consolidated Grain & Barge, Inc." as the lessee.

Based on the foregoing, Defendants dispute whether CGB has a valid permit which they argue would give rise to CGB having standing to assert the instant claim. Defendants state:

> According to its own attorney, [CGB] is fleeting under Permit #1117; however, it is undisputed that this permit was assigned to and bears the name of [CGB Marine Services at M.P. 164, Inc.]. Because the assignment occurred in 1999, well before the filing of this suit, Plaintiff, CGB, has no standing to assert a claim for trespass against Anny. Given the absence of a legally protectable right, CGB lacks standing to assert any claim for interference because it is not the entity conducting the permitted barge fleeting operations at the location at issue.
> In addition to the absence of a valid fleeting permits (sic), CGB does not possess riparian rights required for fleeting. Lease agreements clearly indicate [CGB Marine Services at Mile 164, a division of Consolidated Grain & Barge] as the lessee and despite the fact that it is a division of CGB, it clearly has a separate and distinct juridical persona. [CGB Marine Services at Mile 164, a division of Consolidated Grain & Barge] has entered into leases which it claims are valid. It has applied for Coastal Use and USACE permits in its own name, and it has appeared in other court proceedings through its manager Frank Mellor.

Rec. Doc. 101-1 at 5. In conclusion, Defendants argue that:

> Contrary to CGB's assertion, it does not appear to hold a valid permit to fleet barges as

>claimed. It is beyond dispute that many of the leases granting the required riparian rights do not identify CGB as the Lessee. Because these are essential elements required for maintaining the current action, and essential to establish (sic) that this court has Subject Matter Jurisdiction, CGB is required to prove it has standing.

Rec. Doc. 101-1 at 5-6.

In response, CGB argues that the question of whether CGB was the proper party with a right of action, " is a red herring, however, as the name 'CGB Marine Services at Mile 164' is merely a trade name that CGB uses to identify a division of CGB that operates at the location in question." Rec. Doc. 114 at 7. Further CGB argues that "CGB Marine Services at Mile 164 is not a legal entity separate and distinct from CGB." *Id.* CGB continues its argument by referencing the other business names listed *supra* concluding that, "CGB is the proper party to bring the claims, since it, rather than a trade name that is not a separate, legal entity, suffered actual injury at the hands of the defendants." *Id.* at 5. The Court agrees.

CGB argues that the first prong of the Article III standing test, *supra*, is satisfied because it suffered an "injury in fact" when "SMS and Anny physically interfered with CGB's barge fleeting operations at mile 164 and sent disparaging letters to CGB's customers." Rec. Doc. 114 at 7. CGB argues that the second prong is satisfied because, "it is undisputed that Anny and SMS performed the actions that led to CGB's 'injury in fact.'" *Id.* CGB argues lastly that the third prong is satisfied since a judgment against Defendants will redress CGB's injury.

The essential dispute in this motion is whether CGB was the injured party. Defendants argue that if there was an injury, it was not suffered by CGB because CGB did not obtain the necessary leases and permits in its own name and therefore lacks standing to assert the claims in its complaint. The Court finds that, notwithstanding the fact that alternate names and abbreviations have appeared

on various applications, permits, and leases, CGB ultimately is the actual legal entity with standing to bring its claims against Defendants. CGB has appeared as "CGB Marine Services at Mile 164, a division of Consolidated Grain & Barge, Inc." on each and every lease submitted by Defendants in support of their motion. Defendants have failed to establish that "CGB Marine Services at Mile 164" is anything other than a division of CGB. That is, Defendants have failed to establish that "CGB Marine Services at Mile 164" is legally independent of CGB. As these leases form the basis of the allegations contained in CGB's complaint, CGB is the only proper party to assert the claims contained in the complaint. After an analysis of the complaint, and considering the undisputed facts and the Court's resolution of disputed facts, the Court finds that CGB was the proper party to bring this action and accordingly must deny Defendants' motion to dismiss.

### IV. CONCLUSION

Accordingly;

IT IS ORDERED that Defendant's **Motion to Dismiss(Rec. Doc. 101)** is **DENIED**.

This 5th day of February, 2013.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE