UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONSOLIDATED GRAIN & BARGE, INC. — CIVIL ACTION

VERSUS — No. 11-2204 c/w 11-2615 & 13-5827 Ref.: 13-5827

RANDY ANNY, ET AL. — SECTION: "A" (1)

**ORDER AND REASONS**

The following motions are before the Court: Motion to Remand (Rec. Doc. 225) filed by Barbara Falgoust; Motion to Remand (Rec. Doc. 226) filed by Randy Anny, individually and as Administrator of the Succession of Victoria Ester Martin. American River Transportation Company ("ARTCO") opposes the motions. The motions, set for hearing on December 4, 2013, are before the Court on the briefs without oral argument.[1] For the reasons that follow, the motions are **DENIED**.

**I. BACKGROUND**

On May 24, 2011, ARTCO purchased 382 acres of contiguous land in St. James Parish, Louisiana. On or about August 11, 2011, ARTCO discovered that Anny had constructed a fence, built a road, and conducted other activity on land ARTCO claimed to have acquired in their purchase less than three months prior. ARTCO asserted to Anny their ownership over the land and demanded that he cease and

[1]The Court notes the parties' request for oral argument, but determines that oral argument is not necessary in this matter.

desist all activity on the land.

On August 19, 2011, Anny filed a lawsuit in state court against the "The Heirs of Albert Dubourg."[2] Anny claims to have inherited certain land from the estate of Victoria Ester Martin that adjoins a separate tract of land located downriver (ARTCO's property). Anny cites a notation on a survey plat created by W. J. Cointment in 1991 which indicates that the downriver property was owned by Dubourg.[3] Anny's suit seeks a declaratory judgment that Martin's estate acquired ownership of some of the land on Dubourg's property through acquisitive prescription. Anny's petition states that he seeks the declaratory judgment because "the adjacent land owner has begun questioning where the property boundaries lie."

On October 17, 2011, ARTCO filed a lawsuit against Anny in this Court, alleging that Anny had unlawfully trespassed upon and disturbed ARTCO's real property. This dispute was designated Civil Action 11-2615.

---

[2]Anny's state court petition states that "the appropriate heirs of Albert Dubourg, who is believed to have died on or about December 3, 1948, are unknown." Civil Action 13-5827, Rec. Doc. 1-1 at pg. 4.

[3]Cointment has submitted an affidavit in this case stating that the notation on his plat indicating Dubourg's present or former ownership of that property was incorrect. Further, Cointment states that in creating the plat, his notation was not verified, not based on any title examination, and not meant to form an opinion as to the ownership of the property. He states that he later learned from a surveying company that the landmark which he thought depicted the property line actually depicted an offset or traverse line. *See* Rec. Doc. 237-1 at pgs. 124-30.

In Anny's state court lawsuit, the court appointed attorney Dale Petit as curator to search for and to represent the heirs of Dubourg. Petit was unable to locate any heirs of Dubourg, but filed a general denial answer on their behalf after Anny attempted to take a default judgment against them. Upon realizing that a dispute over the same land was taking place in Civil Action 11-2615 between Anny and ARTCO, Petit filed a motion[4] in state court to continue the proceedings, pending the resolution of Civil Action 11-2615.[5]

On June 21, 2013, Anny's wife Falgoust intervened in Anny's state court lawsuit, asserting her ownership of the land at issue. Falgoust claims to have purchased the disputed land from the Martin estate. Falgoust's petition of intervention named as defendants Anny and the heirs of Dubourg, seeking to preclude them from asserting ownership over the land.[6]

On August 6, 2013, Falgoust filed an amended petition of intervention in the state court lawsuit, adding ARTCO as a defendant. Falgoust once again claims ownership of the property at

---

[4]Rec. Doc. 237-1 at pgs. 26-31.

[5]Petit notes that in the federal court litigation between ARTCO and Anny, Anny makes the same arguments for acquisitive prescription over the same tract of land as in the state court litigation against the heirs of Dubourg.

[6]On July 29, 2013, Falgoust filed a Motion for Preliminary Default against Anny and the heirs of Dubourg. The state court entered preliminary default against these parties on August 14, 2013. Rec. Doc. 237-5 at pgs. 20-21.

issue and notes that "all or part of the same property" is the subject of the dispute between ARTCO and Anny in this Court's Civil Action 11-2615. As a result, Falgoust contends that ARTCO should be made a party to the state court lawsuit.

After being made a party, ARTCO removed the case to this Court on the basis of diversity jurisdiction. The action was designated Civil Action 13-5827 and consolidated with Civil Action 11-2615. In the instant motions, Falgoust and Anny seek to have Civil Action 13-5827 remanded to state court.

**II. CONTROLLING LAW**

Diversity jurisdiction has two requirements, both of which must be fulfilled for a district court to have the power to hear a case. There must first be complete diversity between all plaintiffs and all defendants; secondly, the amount in controversy must be greater than $75,000.[7]

Any civil action brought in a state court may be removed to a district court if the district court would have had original jurisdiction.[8] The removing party must establish the existence of federal jurisdiction.[9] Where improper or fraudulent joinder is being alleged to establish jurisdiction, as ARTCO is claiming, the

---

[7]28 U.S.C. § 1332(a)(1).

[8]28 U.S.C. § 1441.

[9]*Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir. 1992) (*citing B., Inc. v. Miller Brewing Co.,* 63 F.2d 545 (5th Cir. 1981)).

removing party has the burden of proving the claimed fraud.[10] The Fifth Circuit has recognized two ways to establish improper joinder: actual fraud in the pleading of jurisdictional facts, or inability of the plaintiff to establish a cause of action against the non-diverse party in state court.[11]

The manner by which a removing party may prove improper joinder under the second part of the *Smallwood* test is by demonstrating "that there is no possibility of recovery by the plaintiff against an in-state defendant," which means "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[12] A court makes this determination by conducting a 12(b)(6) analysis.[13] However, in conducting this analysis, the court is not limited to a review of the pleadings; rather, the court may pierce the pleadings and consider summary-judgment-type evidence in the record.[14] "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[15]

---

[10] *Dodson,* 951 F.2d at 42.

[11] *Smallwood v. Illinois Cent. R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004).

[12] *Id.*

[13] *Id.*

[14] *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003).

[15] *Smallwood,* 385 F.3d at 573.

The court must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party, then determine whether that party has any possibility of recovery against the party whose joinder is being questioned.[16] The court does not decide whether the plaintiff will actually or even probably prevail on the merits, it only asks if there is a possibility he may do so.[17]

## III. ANALYSIS

### a.) Complete Diversity

The first requirement for diversity jurisdiction is that complete diversity must exist between all plaintiffs and all defendants. As an initial matter, the Court will analyze improper joinder by looking at whether the various claims can survive challenges under Rule 12(b)(6).

The Court will first examine Anny's claim against the heirs of Dubourg. Anny's petition states that he seeks declaratory judgment because "the adjacent land owner has begun questioning where the property boundaries lie." However, despite Anny's knowledge of ARTCO's purchase of the adjoining land and claims regarding its boundaries, he chose to file the suit against the unknown heirs of Dubourg. As Petit, the court-appointed curator for the unknown

[16] *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).

[17] *Id.* (*citing Green v. Amerada Hess Corp.,* 707 F.2d 201 (5th Cir. 1983)).

heirs of Dubourg, has pointed out in his filings[18] in state court, Anny sued the wrong defendant.

In Anny's state court petition, the basis on which he relies to name the heirs of Dubourg as defendants is a plat prepared by Cointment in 1991 denoting Dubourg as owner of the property. However, an affidavit[19] submitted by Cointment makes clear that his plat, which indicated Dubourg's present or former ownership of the land, was not based on any title examination, was not meant to form an opinion as to the ownership of the property, and was wholly incorrect. Without a reliable basis to show that Dubourg holds record title to the land at issue or makes any claim of ownership over that land, Anny has no claim for acquisitive prescription against him. Therefore, Anny's claim against the heirs of Dubourg will not enter into this Court's determination of jurisdiction.

The Court next looks to Falgoust's claim against the heirs of Dubourg. Petit, as court-appointed curator for the heirs of Dubourg, submitted a general denial to Anny's complaint in order to avoid a default judgment. The heirs of Dubourg are a non-existent entity that does not claim any ownership in the land at issue. Thus, Falgoust does not have a claim against them. Just like Anny's claim against the heirs of Dubourg, Falgoust's claim against them will not enter into the Court's jurisdictional determination.

---

[18] Rec. Doc. 237-1 at pgs. 26-31.

[19] *Id.* at pgs. 124-30.

The Court next looks to Falgoust's claim against Anny. In a previous order, this Court has noted Falgoust's refusal to intervene in Civil Action 11-2615, despite her knowledge of the litigation and assertion of ownership over the land at issue. Instead, Falgoust waited almost two years after the initiation of all proceedings and intervened in her husband's state court lawsuit, proceeding to move for default against him and then bring ARTCO into the lawsuit as third party defendant. Falgoust and Anny argue that since Falgoust has brought claims against Anny, a non-diverse defendant, as well as ARTCO, complete diversity does not exist.

The Court struggles with the idea of allowing diversity to be destroyed by a claim between parties that are not only husband and wife, but are also represented by the same law firm. The Supreme Court has stated that "[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants."[20] Rather, in ascertaining the proper alignment of parties for jurisdictional purposes, courts have a "duty" to "look beyond the pleadings, and arrange the parties according to their sides in the dispute."[21] In the Fifth Circuit, "[t]he generally accepted test of proper alignment is

[20] *City of Indianapolis v. Chase Nat. Bank of City of New York*, 314 U.S. 63, 69 (1941).

[21] *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010) (*quoting City of Indianapolis*, 314 U.S. at 69).

whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side."[22]

In carrying out its aforementioned duty, the Court finds that Anny and Falgoust share the same interests in this dispute. Despite Falgoust and Anny's notion that they are adverse to each other in this lawsuit, what lies in common beneath their claims in both Civil Actions 11-2615 and 13-5827 is the staunch resistance to ARTCO's claim of ownership over the disputed land. The efforts of Anny and Falgoust, and that of their shared counsel, contemplate the same end goal of fending off ARTCO's claim of ownership over that land, whether success in doing so comes through Falgoust's claim of record ownership or Anny's claim of acquisitive prescription, as he has asserted against ARTCO in Civil Action 11-2615. As such, both Falgoust and Anny will be considered plaintiffs and Falgoust's claim against Anny will not be given the power to defeat diversity.

The remaining claim for the Court to consider in ruling on the instant motions is Falgoust's claim against ARTCO. ARTCO does not dispute Falgoust's ability to state a claim against it, nor does the Court.

For purposes of determining diversity to rule on the instant motions to remand, Civil Action 13-5827 consists of a claim by

---

[22]*Id.* (*quoting Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984)).

Falgoust as plaintiff against ARTCO as defendant. As Falgoust is a citizen of Louisiana and ARTCO is a citizen of Illinois, complete diversity exists among the parties.

Next, the Court will determine whether ARTCO's removal of this action was timely. The timeliness of removal based on diversity of citizenship is governed by 28 U.S.C. § 1446(c)(1), which provides:

> (1) A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.[23]

Under 28 U.S.C. § 1446(c)(1), cases that are not originally removable but become removable at a later time may not be removed on the basis of diversity more than one year after commencement of the action. However, the statute provides an equitable estoppel exception to the one-year time limit when a plaintiff has acted in bad faith. The Fifth Circuit applies the equitable estoppel exception when a party has "attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights."[24]

ARTCO does not dispute that removal of the state court lawsuit took place more than one year after its commencement. However, ARTCO argues that Falgoust acted in bad faith to prevent removal

---

[23] 28 U.S.C. § 1446(c)(1).

[24] *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428-29 (5th Cir. 2003).

and therefore should be equitably estopped from invoking the one-year time limit under 28 U.S.C. § 1446(c)(1).

On November 14, 2011, Falgoust submitted a declaration in Civil Action 11-2615 stating that she purchased the property in dispute between ARTCO and Anny in 1995 "from the estate of Victoria Ester" and is "the current owner of the subject property."[25] In a previous order, this Court stated that Falgoust's declaration made clear her awareness that ownership of the land was in dispute between ARTCO and Anny in Civil Action 11-2615.[26] Despite Falgoust's apparent decision not to intervene in Civil Action 11-2615 and challenge ARTCO's claim of ownership, she had a claim at that time if she so chose to bring it. Instead, Falgoust waited almost two years and intervened in Anny's state court lawsuit, asserting a non-diverse claim against Anny and then adding ARTCO as a defendant.

The Court finds that Falgoust's actions represent a "transparent attempt to circumvent federal jurisdiction."[27] Accordingly, the Court refuses to apply the one-year time limit for removal due to Falgoust's bad faith under 28 U.S.C. § 1446(c)(1).

---

[25]Rec. Doc. 28-2 at pg. 4.

[26]Rec. Doc. 145 at pg. 6.

[27]*Foster v. Landon*, CIV.A. 04-2645, 2004 WL 2496216 at *5 (E.D. La. Nov. 4, 2004).

**b.) Amount in Controversy**

The second requirement for diversity jurisdiction is that the amount in controversy must exceed $75,000. The defendant in a removed action must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000, exclusive of costs and interest.[28] As the Fifth Circuit has explained:

> The defendant may make [its] showing in either of two ways: (1) by demonstrating that it is facially apparent from the petition that the claims are likely above $75,000.00, or (2) by setting forth the facts in controversy-preferably in the removal petition, but sometimes by affidavit-that support a finding of the requisite amount.[29]

In situations where the amount in controversy is not facially apparent from the complaint, the court may then rely on "summary-judgment-type" evidence to ascertain the amount in controversy.[30]

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."[31] Here, Falgoust is

---

[28]*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

[29]*Id.* (*citing Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).

[30]*White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) (*citing St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57-58 (5th Cir. 1993)).

[31]*Farkas v. GMAC Mortgage, L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (*quoting Hunt v. Wash. State Apple Adver. Comm'n*, 432

asserting ownership over the disputed tract of land. As such, the amount in controversy will be determined by the value of that land.

While ARTCO's Notice of Removal states that the amount in controversy exceeds $75,000, Anny and Falgoust deny that this jurisdictional amount has been established. Anny and Falgoust argue that since the land in controversy comprises less than four acres, using the per-acre price that ARTCO paid for their land values four acres at only $64,000. However, this method of calculating the land's value on a per-acre basis does not take into account the difference in value between land that can be classified as batture property and that which cannot.

In support of its contention that the jurisdictional amount is satisfied, ARTCO has submitted the declaration[32] of Patrick Egan, a Louisiana State Certified General Real Estate Appraiser with over forty years of experience.[33] Egan attests that the batture property at issue in this lawsuit is worth approximately $600 per linear foot. As the land in dispute is in excess of 200 linear feet of batture property, Egan states that "the value of the disputed property in question should exceed $120,000."

---

U.S. 333, 347 (1977)).

[32]Rec. Doc. 237-6 at pgs. 38-41.

[33]Egan's declaration was submitted pursuant to 28 U.S.C.A. § 1746, which gives the effect of an affidavit to one's writing subscribed by him, as true under penalty of perjury, and dated, in appropriate form.

The Court, having considered the summary-judgment-type evidence before it, finds the declaration of Egan to be a reasonable basis for valuing the property. As such, the amount in controversy for Falgoust's claim against ARTCO exceeds the $75,000 threshold and this requirement for diversity jurisdiction is therefore satisfied.

**IV. CONCLUSION**

In sum, this Court has subject matter jurisdiction over Civil Action 13-5827, as diversity of citizenship exists among the parties.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the Motion to Remand (Rec. Doc. 225) filed by Barbara Falgoust is **DENIED**;

**IT IS FURTHER ORDERED** that the Motion to Remand (Rec. Doc. 226) filed by Randy Anny, individually and as Administrator of the Succession of Victoria Ester Martin, is **DENIED.**

This 7th day of April, 2014.

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE