**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

**CONSOLIDATED GRAIN & BARGE, INC.**          **CIVIL ACTION**

**VERSUS**                                    **NO. 11-2204
                                              REFERS TO:
                                              11-2615 and
                                              13-5827**

**RANDY ANNY, ET AL.**                        **SECTION "B"(1)**

<u>ORDER AND REASONS</u>

The instant proceeding regarding satisfaction of American River Transportation Company's (ARTCO) Judgment (Rec. Doc. 376) against Randy Anny and Barbara Falgoust is the most recent, and hopefully the last, chapter in this long-running dispute over the use of land along the Mississippi River.

For the reasons discussed below,

**IT IS ORDERED** that Randy Anny and Barbara Falgoust pay ARTCO eight thousand dollars ($8,000.00) as reasonable attorney's fees, plus the costs of the judgment debtor examination, as financial sanctions for failure to comply with the Court's Order (Rec. Docs. 413, 409-3) that they produce documents for the judgment debtor examination.

**IT IS FURTHER ORDERED** that, if the original Judgment (Rec. Doc. 376) and award of sanctions are not satisfied **by July 15, 2018,** payments owed by Consolidated Grain & Barge (CGB) to Randy Anny, Anny's Inc., and Ainey's, LLC under the Work Agreement (*see*

Rec. Doc. 502-1) shall be paid to ARTCO until the Judgment (Rec. Doc. 376) and award of sanctions are satisfied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In November 2017, ARTCO initiated a garnishment proceeding to satisfy the outstanding portion of the Judgment against Randy Anny and Barbara Falgoust. *See* Rec. Docs. 468-471. At that time, Randy Anny and Barbara Falgoust owed ARTCO $264,926.65 (inclusive of costs and interest). *See* Rec. Doc. 468-4. One garnishee, CGB, responded affirmatively to ARTCO's garnishment interrogatories, indicating that it possessed money belonging to Randy Anny. *See* Rec. Doc. 502 at 1-4. Specifically, CGB stated that:

> [A]s of January 1, 2018, CGB owed (a) "Anny" (a defined term in the Work Agreement meaning, collectively, "Randy Anny, Ainey's LLC, Anny's Inc., or any entity with which each has any affiliation") (i) $100,000.00 pursuant to the Work Agreement, and (ii) $2,482.00 pursuant to that part of the Work Agreement requiring CGB to pay "Anny" $2.00 per barge per day for barges fleeted in specified "additional fleeting areas," and (b) Randy Anny $516.00 for his undivided 25% interest in the leased property described in the Lease referred to in and attached to CGB's Original Response (Rec. Doc. 494).

*Id.* at 4. But CGB's interrogatory response also stated that Anny's Inc. and Ainey's, LLC claim ownership of the $100,000.00 annual payment and the $2,482.00 barge fleeting payment. *See id.* at 3-4; Rec. Doc. 502-6. ARTCO argues that these competing claims to the garnished funds are invalid because Anny's Inc. and Ainey's, LLC are alter egos of Randy Anny. *See* Rec. Doc. 503. Therefore, the Court ordered CGB to (1) pay to ARTCO the $516.00 owed to Randy

2

Anny individually and (2) deposit the $102,482.00 of contested funds into the registry of the Court. *See* Rec. Doc. 506 at 3.

The Court also took steps to resolve the competing claims to the garnished funds that were deposited into the registry of the Court. *See id.* at 3-4. Specifically, the Court ordered Randy Anny and Barbara Falgoust to "substantiate claims that they are distinct from Ainey's, LLC and Anny's Inc. using sworn documentary evidence, including evidence (1) of who owns Ainey's, LLC and Anny's Inc. and (2) that Ainey's, LLC and Anny's Inc. truly in fact and law fully and actively observe corporate formalities." *Id.* The Court also allowed Anny's Inc. and Ainey's, LLC fourteen days "to duly file using qualified counsel a motion to intervene with sworn documentary evidence of their ownership, control, and related claim over funds at issue." *Id.* at 4.

Neither Randy Anny and Barbara Falgoust, nor Anny's Inc. and Ainey's, LLC, fully complied. Randy Anny and Barbara Falgoust filed a declaration with two exhibits, a far cry from the extensive list of documents that have been due to ARTCO since September 2016.[1]

---

[1] Anny and Falgoust were ordered to produce by September 6, 2016, *inter alia*, "[a]ny and all documents relating to any and all businesses . . . jointly or separately owned, operated, or used by the Judgment Debtors within the past five (5) years[;]" "[a] complete list of all . . . stocks . . . (whether in closed corporations or publically owned corporations) owned by Judgment Debtors within the past five (5) years[;]" "[a] complete list of all limited liability company(ies) in which the Judgment Debtors have any membership interest(s) and production of the Operating Agreements for each such limited liability company(ies)[;]"

3

The declaration states that Anny's Inc. and Ainey's, LLC are validly formed under Louisiana law and observe all corporate formalities. See Rec. Doc. 508. The exhibits are the articles of incorporation for Anny's Inc. (Rec. Doc. 508-1) and a stock transfer agreement dated March 2015 (Rec. Doc. 508-2) that purports to transfer all shares in Anny's Inc. from Randy Anny to his son, John Anny.

Anny's Inc. and Ainey's, LLC filed a motion to intervene to assert their claims to the garnished funds. *See* Rec. Doc. 507. They attached a declaration and various real estate records as exhibits. *See* Rec. Docs. 507-1; 507-5; 507-6. The declaration is from Randy Anny and describes how the annual rent payment from CGB is allegedly divided between Anny's Inc. and Ainey's, LLC. *See* Rec. Doc. 507-1. The real estate records are not explained, but purport to document how Anny's Inc. and Ainey's, LLC acquired control of the land along the Mississippi River that CGB currently pays rent to access.[2] *See* Rec. Docs. 507-5; 507-6.

---

"[d]etails concerning any membership interest(s) of the Judgment Debtors in any limited liability company(ies), including each Judgment Debtor's percentage of ownership and an itemized list and particulars on all distribution(s) the Judgment Debtors have received from each limited liability company for the years 2011, 2012, 2013, 2014, 2015 and 2016[;]" and "[a]ny and all documents that reflect or relate to use of proceeds for the sale of any asset owned by the Judgment Debtors within the last five (5) years that exceeds $10,000[.]" Rec. Doc. 409-3 at 1-3 (incorporated into Rec. Doc. 413).
[2] One document is a lease between Barbara Falgoust, as lessor, and Anny's Inc., as lessee. *See* Rec. Doc. 507-5 at 1. The lease appears

4

The Court granted the motion to intervene and set a hearing on the question of whether Anny's Inc. and Ainey's, LLC are alter egos of Randy Anny. *See* Rec. Doc. 511. The Court also ordered ARTCO, Randy Anny, Anny's Inc., and Ainey's, LLC to file memoranda discussing (1) the alter ego question and (2) whether Randy Anny, Barbara Falgoust, Anny's Inc., and Ainey's, LLC should be sanctioned for failing to provide the documentary evidence necessary to properly evaluate the alter ego question. *See id.*

ARTCO's memorandum argues that sanctions should be imposed and that Anny's Inc. and Ainey's, LLC are alter egos of Randy Anny. *See* Rec. Doc. 513. ARTCO argues that the appropriate sanction for the discovery violations is to "find[] [that] all funds payable by CGB under the Work Agreement belong to Randy Anny and that Anny's Inc. and Ainey's, LLC are the alter egos of Anny and Falgoust." *Id.* at 6. ARTCO further argues that "there has been a complete failure to show any legitimate corporate existence for Anny's Inc. and Ainey's, LLC separate and apart from Randy Anny and Barbara Falgoust." *Id.* at 7.

---

to have expired in August 2017, but prior to that time it entitled Barbara Falgoust to $2,500 per year. *See id.* Another document is a lease between the Sara Simms Estate, as lessor, and Anny's Inc., as lessee. *See id.* at 2-4. The lease was not signed until December 2015, so it does not address payments made prior to that date. *See id.* at 2. The third document is a record of sale between Randy Anny, as seller, and Ainey's, LLC, as buyer. *See* Rec. Doc. 507-6. It pertains to two pieces of land on the Mississippi River. *See id.* at 2.

5

The memorandum filed by Anny's Inc. and Ainey's, LLC addresses the issue of sanctions and the alter ego question. *See* Rec. Doc. 514. It argues that sanctions should not be imposed against Anny's Inc. and Ainey's, LLC because (1) counsel did not understand what type of documentary evidence was supposed to be attached to the motion to intervene and (2) counsel was "unable to obtain sworn documentary evidence within the relatively brief time established by the Court[,]" in part because Anny's Inc. and Ainey's, LLC "lack comprehensive document retention policies . . . ." *Id.* at 2-5. Anny's Inc. and Ainey's, LLC also argue that they are not alter egos of Randy Anny because "[s]eparate bank accounts and financial records were maintained for each of the companies and Anny[,]" and "ARTCO cannot establish co-mingling of funds or a disregard for statutory formalities for organization, or transacting business." *Id.* at 6-7. No bank, financial, or management records were attached to the memorandum.

Randy Anny's memorandum largely relies on his previously-filed declaration (Rec. Doc. 508) and adopts the memorandum filed by Anny's Inc. and Ainey's, LLC. *See* Rec. Doc. 516. None of the documents previously requested as part of the judgment debtor examination were attached to the motion, nor does Randy Anny meaningfully discuss the propriety of imposing sanctions for his refusal to produce said documents. *See id.*

On May 16, 2018, the Court held a hearing at which all parties were afforded the opportunity to introduce exhibits substantiating their various claims to the garnished funds and explain any deficiencies in the documents produced for the judgment debtor examination. *See* Rec. Doc. 519. The next day, the parties (including Anny's Inc. and Ainey's, LLC) filed a Joint Status Report stating their "agree[ment] that the [garnished] funds . . . held in the registry of the Court should be immediately disbursed to ARTCO." Rec. Doc. 521. In light of the parties' agreement, the Court ordered that the $102,482.00 of garnished funds be paid to ARTCO and that the parties attend a settlement conference with the Magistrate Judge regarding satisfaction of the remaining part of the Judgment. *See* Rec. Docs. 522, 525. That settlement conference was unsuccessful so the parties filed a Joint Memorandum (Rec. Doc. 529) setting out the remaining unresolved issues related to satisfaction of the Judgment (Rec. Doc. 376) against Randy Anny and Barbara Falgoust. The issues raised in that memorandum were discussed at the most recent hearing on June 13, 2016. *See* Rec. Doc. 530.

**LAW AND ANALYSIS**

Because the parties previously agreed that the $102,482.00 of garnished funds should be paid to ARTCO, *see* Rec. Doc. 521, the only two remaining issues are (1) satisfaction of the balance of the Judgment and (2) whether sanctions are appropriate for

7

noncompliance with the Court's Order regarding the judgment debtor examination.

**I. Satisfaction of the Judgment**

In the recently-filed Joint Memorandum, Randy Anny, Barbara Falgoust, Anny's Inc., and Ainey's LLC represent that they intend to satisfy the remainder of the Judgment by July 15, 2018.[3] *See* Rec. Doc. 529 at 3. Randy Anny, Barbara Falgoust, Anny's Inc., and Ainey's LLC further represent that, if the judgment is not satisfied by July 15, 2018, they welcome "a consent order that any future funds under [the] Work Agreement with CGB be paid directly to ARTCO until [the] Judgment is satisfied in full." *Id.* This is precisely what ARTCO seeks in the Joint Memorandum. *See id.* at 2 ("[T]he Court should order that any sums due under the Work Agreement with CGB (R.Doc. 502-1) should be deposited with the Court or paid directly to ARTCO when the indebtedness becomes due or immediately if any indebtedness is already due."). Therefore, the parties appear to agree that future payments under the Work Agreement should be used to satisfy any portion of the Judgment not satisfied within the next month.

The parties' agreement that payments under the Work Agreement should be used to satisfy the Judgment is consistent with the

---

[3] At the most recent hearing on May 16, 2018, the Court indicated that settling parties regularly consummate settlement within sixty days of reaching agreement. July 15, 2018, is sixty days from the May 16th hearing.

evidence in the record that further establishes Anny's Inc. and Ainey's, LLC are alter egos of Randy Anny.

> To "pierce the corporate veil" or find that a corporation is an alter ego of an individual, the courts traditionally look to five factors that, when considered with the totality of the evidence, indicate that the individual and the corporation were not actually separate entities: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities required for incorporation and for the transaction of corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and, (5) failure to hold regular shareholder or director meetings.

*Riddle v. Simmons*, 40,000, p. 16 (La. App. 2 Cir. 2/16/06); 922 So. 2d 1267, 1280. "Reverse piercing occurs when, through a legal action, assets of the corporate entity are reached to satisfy the obligations of a controlling alter ego[,]" who "may be a corporate shareholder or officer." *Id.* (internal quotation marks omitted). Where, as here, the shareholder or officer has established the existence of the corporate entities, the burden shifts to the creditor to "show the exceptional circumstances which merit piercing the corporate veil . . . ." *Id.* A brief overview of the two entities would be helpful before walking through the five factors.

Anny's Inc. is a corporation organized under Louisiana law. *See* Rec. Doc. 503-3 at 3-6. It was incorporated in August 1994. *See id.* at 2. Anny's Inc. is authorized to issue 100 shares of common stock. *See id.* at 3. In March 2015, Randy Anny transferred

9

100 shares in Anny's Inc. to his son, John Anny. *See* Rec. Doc. 508-2. The financial terms of the transaction are not known. Randy Anny is presently the President and a Director of Anny's Inc. *See* Rec. Doc. 503-3 at 7. Barbara Falgoust is the Secretary/Treasurer and a Director of Anny's Inc. *See id.* There are no other officers or directors. *See id.* Anny's Inc. claims ownership of 30% ($30,000.00) of the annual payment from CGB under the Work Agreement. *See* Rec. Doc. 512 ¶¶ 7, 9.

Ainey's, LLC is a limited liability company under Louisiana law. *See* Rec. Doc. 503-2. It was formed in March 2012. *See id.* at 3. When Ainey's, LLC was formed, Randy Anny and Barbara Falgoust were the only two members. *See id.* at 5. But according to its 2017 Annual Report, Ainey's, LLC now has three members: Randy Anny, Barbara Falgoust, and Anny's Inc. *See id.* at 6. This Annual Report contradicts a recently-filed declaration from Randy Anny and Barbara Falgoust, which states that "Anny's Inc. is the sole member of Ainey's, LLC." Rec. Doc. 508 ¶ 12. There is no information in the record about the transfer of interest in Ainey's, LLC from Randy Anny and/or Barbara Falgoust to Anny's Inc. A recently-filed letter from the accountant for Anny's Inc. and Ainey's, LLC also indicates that "Anny's Inc. is the majority member and interest holder in Ainey's, LLC[,]" which implies that Randy Anny and Barbara Falgoust retain interests in Ainey's, LLC. *See* Rec. Doc. 513-2. Ainey's, LLC claims ownership of 54% ($54,000.00) of the

annual payment from CGB under the Work Agreement. *See* Rec. Doc. 512 ¶¶ 7, 10.

Having sketched out the structure of Anny's Inc. and Ainey's, LLC, the relationship between the two entities, and their various connections to Randy Anny, it is time to address the factors of the alter ego test.

   **a. Commingling of corporate and shareholder funds**

There is undisputed evidence that the funds of Randy Anny, Anny's Inc., and Ainey's, LLC, have been commingled. The Work Agreement (Rec. Doc. 502-1) states that the annual and monthly payments are due to Randy Anny, Ainey's, LLC, and Anny's Inc., but the Work Agreement does not state how each payment should be divided between those three entities. *See* Rec. Doc. 502-1 at 4. Randy Anny provided a W-9 to CGB for the payments. *See* Rec. Doc. 502-2 at 2. The form states that it is for "Randy Anny," indicates that "Randy Anny" is both an "Individual" and a "Limited liability company," and incudes the taxpayer identification number for Ainey's, LLC. See Rec. Docs. 502-2 at 2; 508 ¶ 9. As a result, CGB has made each annual payment in a single check. *See* Rec. Doc. 502-2 at 3-20.

From 2013 through 2016, each check was made payable to Randy Anny. *See* Rec. Doc. 502-2 at 3-20. Randy Anny endorsed each check that was deposited. *See id*. One check is also endorsed by "Anny's Inc.[,]" which is notable because the taxpayer identification

11

number on the W-9 is for Ainey's, LLC. *See id.* at 20. Based on the W-9 that Randy Anny submitted, CGB also issued Form 1099s from 2013 through 2016; each Form 1099 is for Randy Anny, but lists the taxpayer identification number for Ainey's, LLC. *See id.* at 21-24. Then, in January 2017, Barbara Falgoust sent CGB a new W-9. *See* Rec. Doc. 502-3. The new form directs CGB to make payments to "Anny's Inc.[,]" a "C Corporation" with its own taxpayer identification number. *See id.* Since the new W-9 was submitted, payments have been made to Anny's Inc. instead of Randy Anny. *See* Rec. Doc. 502-4 at 1-3.

During the judgment debtor examination held on April 24, 2017, Randy Anny also indicated that he, his son, and Anny's Inc. planned to use company assets to satisfy the personal judgment against Randy Anny and Barbara Falgoust. *See* Rec. Doc. 503-4 at 4. Their own plan for the companies to pay the judgment against Randy Anny and Barbara Falgoust further establishes that there is no material separation between the personal and corporate assets.

Finally, Randy Anny and Barbara Falgoust filed a declaration that suggests that Anny's Inc. and Ainey's, LLC pay for some personal expenses. *See* Rec. Doc. 508. Paragraph three of the declaration states, "The bank accounts belonging to Anny's Inc. are not used to pay the personal bills of Randy Anny and/or Barbara Falgoust *expect when such expenses are paid as part of the salary or compensation of Randy Anny and/or Barbara Falgoust and are*

12

*accounted for as such."* Id. ¶ 3 (emphasis added). Paragraph eleven of the declaration states, "The bank account(s) belonging to Ainey's, LLC are not used to pay the personal bills of Randy Anny and/or Barbara Falgoust *except when such expenses are paid as part of the salary or compensation of Randy Anny and/or Barbara Falgoust and are accounted for as such."* Id. ¶ 11 (emphasis added). These statements are notable because they show additional evidence of commingling; neither Randy Anny nor Barbara Falgoust explain what business purpose supports Anny's Inc. or Ainey's, LLC paying personal expenses directly (while classifying the payments as salary or compensation), instead of allowing Randy Anny and Barbara Falgoust to pay their own personal expenses from any income they receive.

**b. Failure to follow statutory formalities**

According to the Louisiana Secretary of State website, Anny's Inc. and Ainey's, LLC are both in good standing. There is no information in the record about how Anny's Inc. and Ainey's, LLC conduct their corporate affairs. The recently-filed memoranda indicate that some tax returns have been produced to ARTCO, though it is not clear that these records support the argument that Anny's Inc. and Ainey's, LLC comply with corporate formalities. ARTCO states, without attaching the underlying returns, that "various federal tax returns for Anny's Inc. . . . show that Anny's Inc. reported no taxable income for the years 2001-2012." Rec. Doc.

13

513. A copy of a letter from the accountant for Anny's Inc. and Ainey's, LLC states that, as of April 2018, "the tax returns for Ainey's, LLC . . . and Anny's Inc. . . . [we]re in the process of being completed for the years 2013 to 2016." Rec. Doc. 513-2. Incredibly, defendant relies upon an accountant who states that these returns were not originally completed because of "illness of the accountant in charge of above named accounts." *Id.*

### c. Undercapitalization

There is no material information in the record about the capitalization of Anny's Inc. or Ainey's, LLC. At some point Anny's Inc. issued 100 shares of stock to Randy Anny. *See* Rec. Docs. 508-1; 508-2. Those shares were later transferred to Randy Anny's son, John Anny. *See* Rec. Doc. 508-2. There is no record of how much Randy Anny paid for the shares when they were originally issued or how much John Anny paid for the shares in 2015. No evidence has been offered about the assets of Anny's Inc. or Ainey's, LLC, other than the terms of the Work Agreement.

### d. Failure to provide separate bank accounts and records

No bank or accounting records have been provided. In a pair of declarations, Randy Andy states that Anny's Inc. and Ainey's, LLC have their own bank accounts. *See* Rec. Docs. 507-1 ¶¶ 3, 6, 7; 508 ¶¶ 3, 11. But the checks from CGB under the Work Agreement have always been deposited in a single bank account. *See* Rec. Doc. 502-2 at 3-20. There is no evidence currently in the record about

14

how funds were moved between the various entities' and individuals' bank accounts. Therefore, the fact that Anny's Inc. and Ainey's, LLC technically have their own bank accounts does not indicate that these entities are distinct from Randy Anny.

**e. Failure to hold regular shareholder or director meetings**

There is no evidence that Anny's Inc. or Ainey's, LLC hold regular shareholder or director meetings.

**f. Weighing the factors**

The alter ego question is resolved via a totality of the circumstances analysis, so no single factor is dispositive. *See Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1169 (La. 1991). Application of the alter ego doctrine is usually reserved for situations where there has been "fraud, malfeasance, or criminal wrongdoing." *Id.* at 1168. A primary justification of the alter ego doctrine is "to prevent the use of the corporate form in the defrauding of creditors." *Id.* at 1169. Based on the evidence that has been presented so far, no reasonable person or juror could find that Anny's Inc. and Ainey's, LLC are truly independent legal entities.

Admittedly, Anny's Inc. and Ainey's, LLC appear to be validly formed under the laws of Louisiana. But there is no evidence that, in practice, they (1) keep funds separate (between the two entities and between the entities and Randy Anny) or (2) observe corporate formalities in conducting business (such as filing timely tax

returns or keeping financial records). While it is true that Anny's Inc. and Ainey's, LLC are small, closely held, entities that may conduct business less formally that large corporations, *see McDonough Marine Serv. v. Doucet*, 95-2087, p. 9 (La. App. 1 Cir. 6/28/96); 694 So. 2d 305, 310-11, that does not excuse the apparently total disregard demonstrated here. Ultimately, Anny's Inc. and Ainey's, LLC agreed to satisfy the Judgment against Randy Anny and Barbara Falgoust, either by diverting payments under the Work Agreement or using other assets. *See* Rec. Doc. 529. While consent by Anny's Inc. and Ainey's, LLC to use their assets to satisfy the judgment makes it unnecessary to entirely rely on the alter ego doctrine here, their willingness to make such payments is further evidence that Anny's Inc. and Ainey's, LLC are not in fact distinct from Randy Anny and Barbara Falgoust.

**II. Sanctions**

The parties disagree, in part, about whether ARTCO is entitled to contempt sanctions against Randy Anny and Barbara Falgoust for their failure to comply with the Court's orders related to the judgment debtor exam. *See id.* at 2, 4. Anny and Falgoust recognize that "some type of [reasonable] additional fee" is appropriate, but maintain that they "never . . . intend[ed] to delay proceedings or disobey the court's order." *Id.* at 3-4. "Federal courts have the inherent power to punish for contempt[,]" a "power [that] promotes the due and orderly administration of

justice and safeguards the court's authority." *Hornbeck Offshore Servs., LLC v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (internal quotation marks omitted).

"A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Id.* "Good faith is not a defense to civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002). Anny and Falgoust have still not provided the documents that were ordered produced *in 2016* for their judgment debtor examination. *See* Rec. Doc. 506 at 4 n.2 (listing the various documents that were ordered produced). The order at issue is "definite and specific" because it lists in detail the documents that were to be produced, *see* Rec. Doc. 409-3, by a certain deadline, *see* Rec. Doc. 413.

Anny and Falgoust maintain that they did not know they had to provide information about Anny's Inc. and Ainey's, LLC during the judgment debtor examination, but that claim is contradicted by the text of the Court's order. The order instructed Anny and Falgoust to produce, *inter alia*, "[a]ny and all documents relating to any and all *businesses* . . . jointly or separately owned, operated, or used by the Judgment Debtors within the past five (5) years[;]" "[a] complete list of all . . . *stocks* . . . (whether in closed

17

corporations or publically owned corporations) owned by Judgment Debtors within the past five (5) years[;]" "[a] complete list of all *limited liability company(ies)* in which the Judgment Debtors have any membership interest(s) and production of the *Operating Agreements* for each such limited liability company(ies)[;]" "[d]etails concerning any *membership interest(s)* of the Judgment Debtors in any *limited liability company(ies)*, including each Judgment Debtor's percentage of ownership and an itemized list and particulars on all distribution(s) the Judgment Debtors have received from each limited liability company for the years 2011, 2012, 2013, 2014, 2015 and 2016[;]" and "[a]ny and all documents that reflect or relate to use of proceeds for the *sale of any asset* owned by the Judgment Debtors within the last five (5) years that exceeds $10,000[.]" Rec. Doc. 409-3 at 1-3 (incorporated into Rec. Doc. 413) (emphasis added). Anny and Falgoust participated in the judgment debtor examination, indicating that they had notice of the relevant order (Rec. Doc. 413). *See, e.g.*, Rec. Doc. 450. Therefore, the irrefutable factual record contains clear and convincing evidence that Anny and Falgoust are in contempt of the order that they produce documents for their judgment debtor examination.

Civil contempt sanctions "can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Travelhost, Inc. v. Blandford*, 68 F.3d 958,

962 (5th Cir. 1995); *see also In re Bradley*, 588 F.3d 254, 263-64 (5th Cir. 2009). Here, the failure to produce documents for the judgment debtor examination has prolonged ARTCO's efforts to enforce the Judgment against Anny and Falgoust, forcing ARTCO to incur additional costs and attorney's fees. Anny and Falgoust do not debate that their inaction has negatively impacted ARTCO. *See* Rec. Doc. 529 at 3.

At the hearing held on June 13, 2018, counsel for Anny's Inc. and Ainey's, LLC indicated that he believed ARTCO reasonably incurred twenty additional hours of legal fees because of Anny's and Falgoust's contempt. No other party objected to that estimate and it is reasonable given the multiple rounds of briefing and two additional hearings that have been required because of the failure by Anny and Falgoust to timely produce required documents. As indicated at the hearing, a fee of $400 per hour is reasonable for the type of legal work involved in this case, given this Court's experience in fee disputes in this jurisdiction. *See, e.g.*, *Nagle v. Gusman*, No. 12-1910, 2014 WL 12719433, at *3 (E.D. La. Dec. 17, 2014). Therefore, the appropriate sanction is $8,000.00 in attorney's fees, plus the costs

of the judgment debtor examination. *See* Rec. Doc. 413 (ordering that Judgment Debtors will be liable for costs of judgment debtor examination).

New Orleans, Louisiana, this 14th day of June, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE